## Home Lumber Co. v. Helen J. Deisher et al.

1. MECHANICS' LIENS—*Statements as to Who are Sub-contractors.*— Section 5 of the Mechanics' Lien Law of 1895, does not require the owner to demand a statement from the contractor as to those who became sub-contractors more than ten days after the contract for the building was made, and who had not within said ten days made bids or proposals to become sub-contractors.

2. SAME—*Who Can Not Take Advantage of a Failure to Demand a Statement as to Sub-contractors.*—One who first deals with the con-

tractor more than ten days after the contract for a building is made, can not take advantage of the failure of the owner to demand from the contractor a statement of the sub-contractors within said ten days.

**Mechanics' Liens.**—Appeal from the Circuit Court of Stephenson County; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the April term, 1900. Affirmed. Opinion filed October 8, 1900.

ELMER H. ADAMS, attorney for appellant.

BURCHARD & BURRELL, attorneys for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

Helen J., Mary M. and Martha L. Deisher, owners of certain lots in West Freeport, entered into a contract with Wellington Van Valkenburg for the erection of a house thereon. After the erection of the house, numerous parties claimed mechanics' liens thereon as sub-contractors, and said owners thereupon filed this bill of complaint against all parties interested in said building and supposed liens, under section 31 of the Mechanics' Lien Law of 1895. That section provides that if there are several sub-contractors' liens upon the same premises, and the owner fears there is not a suffi-. cient amount coming to the contractor to pay all such liens, such owner, or any one or more persons having such lien, may file a sworn bill in the Circuit Court of the proper county, stating all facts necessary to a full understanding of the rights of the parties, and making parties thereto all persons who have liens upon or are interested in the prem-. ises, and that upon a hearing, the court shall find the amount coming from the owner to the contractor, and the amount due to each of the persons having liens, and in case the amount found coming to the contractor is insufficient to discharge all liens in full, the amount found in favor of the contractor shall be divided between the persons entitled to liens *pro rata*, in proportion to the amounts found due them respectively.

The Home Lumber Company, a defendant, which had furnished materials to Van Valkenburg for the building, filed

an answer and intervening petition.   Other defendants filed
answers.   Van Valkenburg was defaulted.   Upon a hear-
ing, a decree was rendered, finding that the owners  owed
Van Valkenburg $155.19; that Van Valkenburg owed A.
D. Cain, a sub-contractor and defendant, $22.75, and owed
the Home Lumber Company $340.95; and that the other
sub-contractors were not entitled to liens; but that said two
sub-contractors, Cain and the Home Lumber Company,
were only entitled to liens to the extent of said sum of
$155.19, still due from the owners; and a decree was rendered
giving them liens *pro rata* amounting to said sum of $155.19.
The Home Lumber Company appeals.

Appellant claims the owners had not complied with sec-
tions 5 and 23 of said mechanics' lien act, and therefore
under section 33 thereof all payments previously made by
the owners to Van Valkenburg were in violation of the
rights of appellant, and it therefore should have a lien for
the full amount due it.   Section 33 provides that no pay-
ments to the contractor shall be regarded as rightfully
made, as against the sub-contractor or party furnishing
materials, if made by the owner without exercising or en-
forcing the rights and powers conferred upon him in sec-
tions 5 and 23 of the act.   Section 5 provides that within
ten days after the contract for the building is made, and
before commencing thereunder, it shall be the duty of the
contractor to give the owner, and also the duty of the
owner to require of the contractor a statement in writing,
under oath, of the names and addresses of all parties hav-
ing sub-contracts for specific portions of the work, or for
materials, and of the amount to become due each, and
when; or, if any such sub-contracts are not then let, the
names and addresses of those who have made bids or pro-
posals for the same, or for material, and the respective
amounts of such bids or proposals, and within ten days
after the same are accepted, the amount thereof; and if any
contractor shall fail to so notify the owner within five days
after written notice to do so, the owner may cancel the
contract with the contractor; but that this section shall

not apply to contractors who have given, or within said ten days first named shall give, to the owner a sufficient bond for the completion of such building free of liens, such bond to be made for the use of those entitled to liens. In the present case the owners did not require of the contractor, within ten days after the contract was made, nor did the contractor furnish the owners such a statement in writing, nor did the contractor give the owners a bond for the completion of the building free of liens; and it is argued that this failure to require such written statement under oath was such a failure to exercise the rights conferred by said section 5 as, under section 33, deprived the owners of the benefit of payments made by them to the contractor. The contract between the owners and Van Valkenburg was made on April 28th, and the contract between Van Valkenburg and the Home Lumber Company was not made within ten days thereafter, nor had the Home Lumber Company made bids or proposals to furnish materials for said building within ten days after the making of the original contract. On the contrary, its first dealing with Van Valkenburg relative to furnishing materials was on May 24th. Therefore, if the owners had called for and received the statement required by section 5, such statement would have furnished the owners no information concerning the Home Lumber Company. Section 5 does not require that the owners shall continue to demand statements of the contractor from time to time thereafter as sub-contracts shall be made, and as the mechanics' lien law is to be strictly construed, we can not so extend the provisions of that section. The Home Lumber Company, therefore, is not entitled to a lien, because of the failure of the owners to require that which would not have benefited the Home Lumber Company, nor given the owners any information concerning its dealings with the contractor a month later. When the Home Lumber Company made its first arrangement to ship materials to Van Valkenburg it was bound to know that the contract had been made about a month previous, and that the ten days named in section 5 had ex-

pired, and that if such a written statement had been called for by the owner and furnished by the contractor, it gave no information concerning the Home Lumber Company; and its remedy was to give notice to the owner, as permitted to it by section 25 of said act. It did at a certain time afterward, give notice to the owners, and it received by the decree of the court below, all the benefit. it was entitled to by virtue of such notice. Section 23, also relied upon by appellant, provides that any sub-contractor shall, as often as requested in writing by the owner or contractor, make out and give to such owner or contractor a statement under oath of the persons furnishing material to such sub-contractor, giving their names, and how much, if anything, is due or to become due to each of them, and when the same became or will become due. But the Home Lumber Company did not furnish material to a sub-contractor, and therefore section 23 is not applicable to this case. We conclude the decree is right, under the facts, not only for the reasons above stated, but also for various defects in proof, which we deem it unnecessary to discuss.

The owners have assigned cross-errors, denying the right of the Home Lumber Company to any lien, and also questioning the amount found due. The owners, however, do not insist upon these cross-errors, unless the cause is reversed, and they admit having paid into court, before the appeal bond was filed, the sum of $155.19, in satisfaction of the decree. It is therefore unnecessary for us to discuss the cross-errors. The decree is therefore affirmed.